RONALD ABRAMSON (*Pro Hac Vice* forthcoming)
ron.abramson@listonabramson.com
DAVID G. LISTON (*Pro Hac Vice* forthcoming)
david.liston@listonabramson.com
ARI J. JAFFESS (*Pro Hac Vice* forthcoming)
ari.jaffess@listonabramson.com
ALEX G. PATCHEN (*Pro Hac Vice* forthcoming)
alex.patchen@listonabramson.com
LISTON ABRAMSON LLP
405 Lexington Avenue, 46th Floor
New York, New York 10174
Telephone: (212) 357-1630
Facsimile: (917) 999-9999
(Lead Counsel)

WILLIAM A. WHITE (State Bar No. 121681)
wwhite@hillfarrer.com
HILL, FARRER & BURRILL LLP
One California Plaza
300 South Grand Avenue, 37th Floor
Los Angeles, California 90071
Telephone: (213) 620-0460
Facsimile: (213) 624-4840
(Local Counsel)

Attorneys for Plaintiff
WAG ACQUISITION, L.L.C.

# IN THE UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| WAG ACQUISITION, L.L.C., a New Jersey limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY, a Delaware Corporation, and DISNEY STREAMING SERVICES LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO.  2:21-cv-8230<br><br>**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL** |

Plaintiff WAG Acquisition, L.L.C. ("WAG" or "Plaintiff") alleges as follows, for its complaint against Defendants:

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), in that this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 et seq. This Court has general as well as specific personal jurisdiction over Defendants because they reside in this District and have engaged in systematic and continuous business activities in this District, including acts of patent infringement within this District giving rise to the claims asserted herein.

2. Defendants have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Defendants offer products and services in this District and Defendant Disney is headquartered in this District. On information, a substantial number of Defendants' employees in this District are engineers who work on streaming media development and related technology. On information and belief, these technical employees within this District have committed acts of infringement on behalf of Defendants in this District by conduct including configuring and managing Defendants' servers and software for media player devices, and testing and/or using media player devices, to infringe the patents-in-suit as hereinafter alleged. On information and belief, Defendants distribute streaming media over a content distribution network (CDN) that utilizes servers in this District, over which Defendants exercise control, through operation and configuration, in a manner that causes the servers so controlled by Defendants to infringe.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Defendants have regular and established places of business in this District and have committed acts of infringement in this District by reason, *inter alia*, of having acted in this District to configure and manage Defendants' servers for distributing

**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

streaming video, and software for media player devices, and to test and/or use media player devices, in a manner that infringes the patents-in-suit as hereinafter alleged.

## INTRODUCTION

4. Plaintiff's predecessor, known as Surfer NETWORK, developed technology to improve the process of delivering streaming media over the Internet, reflected in a family of United States patents including without limitation U.S. Patent Nos. 9,742,824, 9,729,594, and 9,762,636 (the "patents-in-suit").

5. Defendants have used the technology taught and claimed in the patents-in-suit to their substantial financial benefit, to achieve responsive and stable delivery of its media, including without limitation video-on-demand ("VOD") and live programming, which Defendants provide via the Internet in the United States and worldwide, for pre-recorded and live programming, delivered to desktop, tablet, smartphone, smart TV, streaming stick, and other streaming device and media player platforms, by way of their streaming video services ("Defendants' Video Services").

6. Plaintiff alleges that Defendants' Internet delivery of streaming video via Defendants' Video Services has infringed the patents-in-suit, as more particularly specified herein.

## THE PARTIES

7. WAG Acquisition, L.L.C. is a New Jersey limited liability company with its principal place of business at 275 Route 10 East, Suite 220-313, Succasunna, New Jersey 07876.

8. Defendant The Walt Disney Company ("Disney") is a Delaware corporation with its principal place of business at 500 South Buena Vista Street, Burbank, California, 91521.

9. Defendant Disney Streaming Services LLC ("DSS") is a Delaware limited liability company with a place of business at 500 South Buena Vista Street, Burbank, California, 91521. On information and belief, DSS is the legal and business

**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

successor of BAMTech LLC, a Delaware limited liability company of which Defendant Disney acquired a majority ownership interest in September 2017.

## THE PATENTS-IN-SUIT

10. The patents-in-suit comprise the following United States patents, which were duly and legally issued on the dates indicated:

- U.S. Patent No. 9,742,824 (the "'824 patent"), Issue Date: August 22, 2017, Title: Streaming Media Delivery System. A copy of the '824 patent is attached hereto as Exhibit A and incorporated herein by reference.
- U.S. Patent No. 9,729,594 (the "'594 patent"), Issue Date: August 8, 2017, Title: Streaming Media Delivery System. A copy of the '594 patent is attached hereto as Exhibit B and incorporated herein by reference.
- U.S. Patent No. 9,762,636 (the "'636 patent"), Issue Date: September 12, 2017, Title: Streaming Media Delivery System. A copy of the '636 patent is attached hereto as Exhibit C and incorporated herein by reference.

11. The patents-in-suit were developed in the course of SurferNETWORK's business and were assigned by Harold Price (the inventor) to SurferNETWORK. Plaintiff now owns all rights to the patents-in-suit, including without limitation all rights to recover for infringement of the patents-in-suit.

12. Plaintiff has complied with the marking provisions of 35 U.S.C. § 287(a), and also required those persons authorized to operate for or under Plaintiff to comply therewith.

13. The patents-in-suit concern technological solutions to two problems that SurferNETWORK perceived in the early streaming media implementations that characterized the prior art. First, the beginning of playback, when a user clicked on a program, would entail a significant period of "buffering," during which the user

would typically only see an hourglass. During this period, the user would have to wait until the player accumulated sufficient content over its Internet connection for the program to start. Second, even after the program started, if the program stream became interrupted, a repeat of the long and frustrating "buffering"/hourglass sequence would be necessary, and this uneven stuttering behavior could occur repeatedly. These problems resulted in a poor user experience and greatly disadvantaged Internet streaming media as compared competitively against other forms of audio and/or video media, such as radio and TV.

14. SurferNETWORK sought a solution that would jump-start Internet media playback to achieve the perception of "Instant On," so as to provide a user experience akin to what ordinarily happened when turning on a transistor radio. The patents-in-suit address the identified shortcomings in the prior art by changing the manner of use of computer facilities and the sequence of operations by which streaming media is delivered over an Internet connection, to provide an Internet streaming user experience that would then be comparable to the immediacy and continuity that the user enjoyed with ordinary radio and television.

15. The advances that the patents-in-suit assert improve over the prior art include achieving the twin and simultaneous objects of (1) fast streaming startup after a user requests a stream, and (2) avoiding interruptions once the streaming starts, for the duration of the streamed program. The claims of the patents-in-suit spell out not only these functional twin objectives, but also recite how to implement a process that achieves both objectives—*i.e.*, making the data constituting the program stream available as discrete chunks identified by serial ID, responding to client requests made for the chunks by their serial IDs, and sending each requested chunk comprising the entire stream at a higher-than-playback transmission rate. By doing these things, the patented mechanism ensures that each chunk can be transferred to the client before it is needed for playback, so the streaming client will have the latitude it needs to control the timing of its chunk requests so as to maintain its input buffer at a desired

**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

level for the entire transmission of the stream, thereby achieving the desired advance over the prior art. The claims are thus directed at specific technological measures that improve the speed and reliability of how the client and server computers communicate. Those measures utilize the computer components in each such computer to function in a different way than those components were used in prior approaches, thereby improving how computers communicate.

16. Inventive concepts in the patents-in-suit lie in the ability to satisfy the requirements for fast streaming startup and uninterrupted delivery by switching to a "pull" model, where the flow is regulated by the pace of client requests, rather than trying to have the server pace its own delivery, and in making the pull mechanism workable, by (i) pre-collecting quantities of the program in time-sequenced chunks, (ii) using serial identifiers to ensure proper ordering of the chunks (even if some chunks are sent more quickly than others), (iii) making the server responsive to requests for chunks by their serial identifiers, and (iv) ensuring that the server will send each chunk faster than the playback rate.

17. With regard to the claims concerning receiving streams (as in the '594 patent), further inventive concepts lie in the client's ability to monitor the state of its buffer and rate of consumption of media to determine when to request chunks, and how many to request. The claims at issue make clear that not only the startup but the entire duration of the program is streamed in this manner, and using this combination of steps for sustained media streaming was not conventional at the time of the invention.

18. Defendants' accused systems avoid the delays and stuttering that characterized the prior art by using the technology claimed in Plaintiff's patents.

**COUNT I: INFRINGEMENT OF THE '824 PATENT**

19. Plaintiff repeats and realleges the averments of paragraphs 1-18 above as if fully set forth at length herein.

**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

20. Defendants have each infringed the '824 patent under 35 U.S.C. § 271(a) by making and using server systems in accordance with one or more claims thereof, without authorization and in the United States, by conduct as hereinafter more particularly alleged.

21. In particular, Defendants' Video Services have taken advantage of Plaintiff's improved technology as claimed in the '824 patent, throughout the term of the '824 patent.

22. Defendants, through their Video Services, distribute (and during the entire term of the '824 patent, have distributed), pre-recorded ("video on demand" (VOD)) video programs that are digitally stored in and read from their server systems, located in, or controlled from, the United States.

23. With regard to claim 1, on information and belief, Defendants originate VOD streams for distribution through a content delivery network, and configure, manage and/or control the corresponding streaming servers and services.

24. The VOD streams result from recorded programs stored under the control of Defendants' servers, in data structures under the control of the server system. The programs are read from the storage when views thereof are requested by Defendants' customers.

25. The media data elements representing a program distributed through Defendants' Video Services each comprise a digitally encoded portion of the program, for example, in video/mp4 encoding at a playback rate corresponding to the encoding. This is shown in Exhibit D attached hereto, which shows requests and responses captured in mid-stream during a user's reception of Defendants' video programming.

26. As shown in Exhibit D, the media data elements are serially identified by numeric identifiers, which indicate a time sequence of the media data elements.

27. Exhibit D shows requests for media data elements having identifiers specified in the client request, *e.g.*, 48_048. The next following video

**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

request/response is similar, except that the identifier is 56_056, where the first two digits increment by 8 or a multiple of 8 with each successive request, beginning over at 60, and the last three digits also increment by 8, returning to 136 after reaching 808. The foregoing constitutes a repetitive pattern of incrementing/recycling identifiers that continues until the end of the program.

28. Exhibit E is another view of requests to and responses from Defendants' servers during a streaming session. Exhibit E shows that the server system receives "GET" requests (as shown in the top portion of the figure) from user systems via data connections over the Internet, for media data elements identified by numeric identifiers. Responsive to those requests, the server system sends to the requesting user system the media data elements having the serial identifier corresponding to the request (as shown in the bottom portion of the figure).

29. In observed streaming sessions, the data connection of the server to the user system, used for so responding, has consistently had a data rate more rapid than the playback rate of the media data elements that are being sent via that connection, and each sending is at a transmission rate as fast as that data connection will allow. The media data elements being sent are selected as requested, and thus without depending on the server system maintaining a record of the last media data element that had been sent to the requesting user system. Likewise, such observations also reflect that all of the media data elements that are so sent by the server system to the one or more user systems (*i.e.*, from the beginning to the end of the viewing session) are sent solely in response to the user system requests, and all of the media data elements that are sent by the server system to the requesting user systems are sent from the data structure under the control of the server system as the media data elements were first stored therein.

30. Furthermore, with regard to the dependent claims, as reflected in the above example, the aforementioned identifiers, in addition to being serial, may also

**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

be sequential, and the sending is via a reliable transmission protocol, which may be TCP.

31.     Defendants also make and use systems that incorporate and execute instructions that carry out the foregoing streaming media distribution, as well as computer-readable media (computer program products) that incorporate such instructions.

32.     Defendants, by performing the above-described processes, and making and using the above-described systems and computer program products, have thereby infringed one or more claims of the '824 patent during its term, in the United States.

33.     The foregoing allegations encompass all servers used for distributing Disney+ Video Services in, or controlled from, the United States (regardless of where the users were located).

34.     Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to not less than a reasonable royalty for the use made by Defendants under the '824 patent, in an amount subject to proof at trial, together with interest and costs as fixed by the Court.

## COUNT II: INFRINGEMENT OF THE '594 PATENT

35.     Plaintiff repeats and realleges the averments of paragraphs 1-34 above as if fully set forth at length herein.

36.     Defendants have each infringed the '594 patent under 35 U.S.C. § 271(a) by making and using computer recorded media for a streaming media player in accordance with one or more claims thereof, without authorization and in the United States, by conduct as hereinafter more particularly alleged.

37.     In particular, Defendants' Video Services have taken advantage of Plaintiff's improved technology as claimed in the '594 patent, throughout the term of the '594 patent.

38.     With regard to claim 1, Defendants' Video Services utilizes software provided by Defendants and put into the hands of the user, which executes on the user's media consuming device (*e.g.*, computer, smartphone, tablet, smart TV,

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

streaming stick, or other streaming devices, referred to as the "media player"), and causes that device to make requests for streaming media data elements that are handled by Disney+ servers as described above in connection with the '824 patent.

39. The software described in the foregoing paragraph is embodied in JavaScript files (*e.g.*, files named "bam-hls.js" (in whole or in part) and like names), which Defendants create and maintain as electronic copies on computer-readable media on their server systems, thereby making articles within the scope of the claims of the '594 patent. During the term of the '594 patent, Defendants have used their copies of such software, under the control of Defendants' servers, to read from such copies the contents of the JavaScript software, to enable Defendants' servers to transmit the JavaScript files to users, so that said software may then be operated on the user's media player device to make the above-described requests to the servers deployed by Defendants' Video Services, and work correctly with those servers.

40. The JavaScript software instructions are executable to cause the user's media player (via its processor) to send requests (HTTP GET requests as addressed above with respect to the '824 patent) via an Internet connection for a media data element that is part of a desired audio/video stream, identified by a serial identifier. The requested media data elements have a playback rate.

41. Plaintiff states, on the same basis as it did with respect to the corresponding allegations concerning the '824 patent, *i.e.*, based on direct observation, that the JavaScript instructions also cause the media player to receive the requested media data elements over a data connection having a data rate more rapid than the playback rate, receiving the requested media data elements as fast as the data connection allows.

42. Monitoring playback further shows that the instructions further cause the media player to store the received media data elements in its memory, and play the received media data elements back in series from the memory. Observing the captures over time also reflects that the instructions are further executable to cause

- 10 -
**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

the media player, as the received media data elements are played, to automatically send additional requests for subsequent media data elements for storage in the memory of the media player, as required to maintain about a predetermined number of media data elements in the memory of the media player during playing.

43. Furthermore, with regard to the dependent claims, the instructions cause the media player to maintain in its memory a record identifying the last media data element received and stored by the media player. As reflected in the above example, shown in paragraph 24, the serial identifiers, in addition to being serial, may also be sequential. The media data elements are received via a reliable transmission protocol, which may be TCP. In addition, as noted above, the JavaScript software is provided as a software application for the media player.

44. Defendants, by making and using the systems and computer program products described above, have each thereby infringed one or more claims of the '594 patent, during its term, in the United States.

45. The foregoing allegations encompass all servers used for distributing Disney+ Video Services in, or controlled from, the United States (regardless of where the users were located).

46. Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to not less than a reasonable royalty for the use made by Defendants under the '594 patent, in an amount subject to proof at trial, together with interest and costs as fixed by the Court.

**COUNT III: INFRINGEMENT OF THE '636 PATENT**

47. Plaintiff repeats and realleges the averments of paragraphs 1-46 above as if fully set forth at length herein.

48. Defendants have each infringed the '636 patent under 35 U.S.C. § 271(a) by making and using server systems in accordance with one or more claims thereof, without authorization and in the United States, by conduct as hereinafter more particularly alleged.

**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

49. In particular, Defendants' Streaming Services have taken advantage of Plaintiff's improved technology as claimed in the '636 patent, throughout the term of the '636 patent.

50. With regard to claim 1, Defendants, through the Defendants' Streaming Services distribute (and throughout the term of the '636 patent have distributed) live video programs over the Internet, where each live program is transmitted to a plurality of user systems.

51. Defendants' live streaming has included without limitation the widespread streaming of sports events, and well as providing streaming services for others that supported and distributed live streams. All of these activities are part of the infringing conduct hereinafter alleged.

52. To do the foregoing, Defendants receive at their server systems a continuous digitally encoded stream for the program, via a data connection from a live source, in real time. Upon receipt of the stream, Defendants' servers supplied media data elements representing the program, in which each element comprises a digitally encoded portion of the program, for example, in transport stream (.ts) media segments, in a plurality of encodings, such as video/MP2T, each at a playback rate corresponding to the encoding. This is reflected in Exhibit F, attached hereto, which is representative of requests and responses captured in mid-stream during a user's reception of Defendants' video programming.

53. As shown in the left-hand panel of Exhibit F, the media data elements for a live transmission are serially identified by numeric identifiers, which indicate a time sequence of the media data elements. As further reflected in that panel, the media data elements are stored in a data structure under the control of the server system.

54. Exhibit F reflects requests being made to Defendants' servers by a user system, for media data elements having identifiers specified in the client request, *e.g.*, 09_137. The next following video request/response is similar, except that the

**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

identifier is 14_142, where the first two and last three sets of digits increment by 5 and recycle after reaching a maximum value, similar to the pattern shown above with respect to pre-recorded media and the '824 patent. As in the case of the pre-recorded video, the foregoing constitutes a repetitive pattern of incrementing/recycling identifiers that continues until the end of the program.

55. Exhibit F also shows that the server system receives "GET" requests (as shown in the top right portion of the figure) from user systems via data connections over the Internet, for media data elements identified by numeric identifiers (the identifier is cut off in the printout of the GET request, but it can be seen on the left panel that the request is to GET element 04_193.ts). Responsive to those requests, the server system sends to the requesting user system the media data elements having the serial identifier corresponding to the request (*i.e.*, 04_193).

56. In observed streaming sessions of Defendants' live programming, the data connection of the server to the user system, used for so responding, has consistently had a data rate more rapid than the playback rate of the media data elements that are being sent via that connection, and each sending is at a transmission rate as fast as that data connection will allow. As each element sent is responsive to a prior request to the server, for by that element, by its identifier, it appears that the media data elements being sent are selected without depending on the server system maintaining a record of the last media data element that had been sent to the requesting user system. It is further observed that, in such transmissions, all of the media data elements that are so sent by the server system to the one or more user systems are sent in response to the user system requests, and all of the media data elements that are sent by the server system to the requesting user systems are sent from the data structure under the control of the server system as the media data elements were first stored therein.

57. Furthermore, with regard to the dependent claims, as reflected in the above example, the aforementioned identifiers, in addition to being serial, may also

be sequential, and the sending is via a reliable transmission protocol, which may be TCP.

58. Defendants also make and use systems that incorporate and execute instructions that carry out the foregoing streaming media distribution, as well as computer-readable media (computer program products) that incorporate such instructions.

59. Defendants, by performing the above-described processes, and making and using the above-described systems and computer program products, have each thereby infringed one or more claims of the '636 patent during its term, in the United States.

60. The foregoing allegations encompass all servers used for distributing live video in, or controlled from, the United States (regardless of where the users were located).

61. Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to not less than a reasonable royalty for the use made by the Defendants under the '636 patent, in an amount subject to proof at trial, together with interest and costs as fixed by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff WAG ACQUISITION, L.L.C. requests an entry of judgment in its favor and against Defendants as follows:

  i. Declaring that Defendants have infringed one of more claims of United States Patent Nos. 9,742,824 and 9,729,594;

  ii. Awarding to Plaintiff the damages arising out of said infringement of United States Patent Nos. 9,742,824 and 9,762,636;

  iii. Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law, against Defendants;

  iv. Awarding costs in this action to Plaintiff; and

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

1     v.    For such other and further relief as the Court may deem just and proper.

DATED: October 18, 2021                    **HILL, FARRER & BURRILL LLP**

By: */s/ William A. White*
    William A. White
    Jeffrey B. Bell
    Attorneys for Defendant
    WAG ACQUISITION, L.L.C.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

HFB 2438907.4

- 15 -

**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**